**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| IN THE MATTER OF:<br><br>SUMMIT HOTELS LLC,<br><br>Debtor. | CASE NO. 21−80092−BSK<br>CHAPTER 11<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY** |

COMES NOW FNBC Bank ("**Bank**"), a secured creditor and party-in-interest in this bankruptcy case, by and through its undersigned counsel, and moves for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) for, among other reasons, the fact Bank is not being adequately protected, Summit Hotels LLC ("**Debtor**") filed its petition in bad faith, and because Debtor does not have equity in its property and its property is not necessary for an effective reorganization.  Bank requests relief from the automatic stay to permit it to continue with its non-judicial foreclosure of Debtor's real property and personal property pursuant to applicable state law.

I.      **INTRODUCTION AND FACTUAL SUMMARY**

1.      Bank is a national banking association with its headquarters located in Ash Flat, Arkansas.

2.      Debtor is a Nebraska limited liability company.  Debtor owns and formerly operated the Sheraton Hotel located at 655 N. 108 Ave., Omaha, Nebraska (the "**Hotel**").

3. Bank and Debtor (among others) entered into a loan agreement dated December 21, 2017 (the "**Loan Agreement**").

4. Pursuant to the Loan Agreement, Bank loaned Debtor $7,500,000.00, and, on December 21, 2017, Debtor signed and delivered to Bank a promissory note in the original principal amount of $7,500,000.00 (the "**Note**").

5. In order to secure its obligations owed to Bank, on December 21, 2017, Debtor signed a deed of trust, security agreement and fixture filing in favor of Bank (the "**Deed of Trust**"), granting Bank a lien on, among other things, the real property commonly known as 655 N. 108 Ave., Omaha, Nebraska and all improvements and fixtures located thereon (the "**Real Property**"). Bank recorded the Deed of Trust in the office of the Register of Deeds of Douglas County, Nebraska on December 26, 2017 as Instrument # 2017103876.

6. In order to secure its obligations owed to Bank, on December 20, 2017, Debtor signed a commercial security agreement in favor of Bank (the "**Security Agreement**"). Hereinafter, the Loan Agreement, Note, Deed of Trust, Security Agreement, and all other instruments and agreements which evidence, relate to, and/or secure Debtor's obligations owed to Bank shall collectively be referred to as the "**Loan Documents**".

7. Pursuant to the Security Agreement, Debtor granted Bank a security interest in essentially all of its personal property, including but not limited to all furniture, fixtures, equipment, inventory, accounts, and general intangibles

(collectively, and together will all other personal property identified in the Security Agreement, the "**Personal Property**"; hereinafter the Personal Property and the Real Property may be referred to collectively as the "**Collateral**").

8. Bank properly perfected its security interest in the Personal Property by filing a Uniform Commercial Code Financing Statement with the Nebraska Secretary of State on December 28, 2017, Filing No. 9917803685-3.

9. Debtor defaulted on its obligations owed to Bank pursuant to the Loan Documents by failing to make required payments to Bank when due, and on May 28, 2020 Debtor's loan was 90 days delinquent. Debtor has not made a loan payment, or any payments for that matter, to Bank since March 3, 2020.

10. Debtor has not operated the Hotel since March 25, 2020.

11. Due to Debtor's defaults, Bank began exercising its remedies. In particular: (a) pursuant to the Nebraska Trust Deeds Act, Bank commenced a non-judicial foreclosure process against the Real Property, and (b) pursuant to Article 9 of the Nebraska Uniform Commercial Code, Bank commenced a non-judicial liquidation process against the Personal Property.

12. The Bank's foreclosure sales regarding both the Real Property and the Personal Property were scheduled for February 3, 2021 at 9:30 a.m.

13. At approximately 3:30 p.m. on February 2, 2021—on the eve of Bank's foreclosure sales—Debtor filed its petition for relief herein.

14. As of February 2, 2021, Debtor owed Bank not less than $4,818,427.68 pursuant to the Loan Documents, which amount is comprised of

the principal balance of $4,587,222.60, accrued interest of $197,566.07, late charges of $1,750.00, plus pre-petition attorneys' fees and costs (collectively, the "**Indebtedness**").

## II. BANK IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY FOR CAUSE, INCLUDING DEBTOR'S INABILITY TO ADEQUATELY PROTECT BANK'S INTERESTS AND DEBTOR'S BAD FAITH FILING OF ITS PETITION HEREIN.

15. A party in interest, such as Bank, is entitled to relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest…" 11 U.S.C. § 362(d)(1).

16. The Bankruptcy Code does not define the term "cause"; accordingly, courts must determine what constitutes "cause" on a case-by-case basis. *In re Anthony*, 481 B.R. 602 (D. Neb. 2012).

17. A creditor requesting relief from the automatic stay must establish "cause" exists by prima facie evidence, but the debtor bears the ultimate burden of proof in opposing the motion for relief. 11 U.S.C. § 362(g); *In re Bowman*, 253 B.R. 233 (8th Cir. BAP 2000); *In re Morales*, 403 B.R. 629, 631 (Bankr. N.D. Iowa 2009)

### A. Bank's Interests In The Collateral Are Not Being Adequately Protected.

18. Bank's interests in the Collateral are not being adequately protected. "The 'interest in property' that is protected is the 'value of collateral.'" *In re Johnson*, 90 B.R. 973 (Bankr. D. Minn. 1988) (*citing Timbers*, 484 U.S. at 370-371). As the United States Supreme Court has observed:

> It is common ground that the "interest in property" referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; *and that interest is not adequately protected if the security is depreciating during the term of the stay*. Thus, it is agreed that if the [collateral] in this case had been declining in value petitioner would have been entitled, under § 362(d)(1), to cash payments or additional security in the amount of the decline, as § 361 describes.

*Timbers*, 484 U.S. at 370-371 (emphasis added).

19. Debtor owes delinquent real estate taxes on the Real Property to Douglas County, Nebraska in the amount of $139,159.82. (*See* Claim No. 3).

20. Debtor owes delinquent personal property taxes on the Personal Property to Douglas County, Nebraska in the amount of $94,497.86. (*See* Claim No. 2).

21. Pursuant to NEB. REV. STAT. §45-104.01, interest is accruing on Debtor's delinquent real estate taxes and personal property taxes at the rate of fourteen percent per year.

22. Douglas County, Nebraska asserts the delinquent real estate and personal property taxes are a first priority lien against the Real Property and the Personal Property. As a result, the delinquent real estate taxes and personal property taxes, and the interest accruing thereon, are rapidly eroding Bank's collateral position, and Bank's interests are not being adequately protected.

23. Debtor has not paid its real estate taxes for several years. Bank was required to pay the Douglas County Treasurer $450,369.78 to redeem several real

estate tax sale certificates that had been issued due to Debtor's non-payment of real estate taxes.

24. In addition, Bank, not the Debtor, has been forced to pay the costs and expenses of preserving the Collateral for the last six months. In particular, Bank has paid the following costs and expenses:

   a. $135,200.00 to Lee & Mason Financial Services for the premium for force placed insurance on the Collateral;

   b. $42,545.76 to Wistar Group for various property management-related services for the Hotel, including but not limited to snow removal, phone service maintenance, minor repairs, pest control, trash removal, emergency maintenance services, and fire alarm and sprinkler-related servicing at the Hotel;

   c. $36,618.33 to Omaha Public Power District for utilities at the Hotel;

   d. $4,313.54 to Metropolitan Utilities District for utilities at the Hotel;

   e. $2,395.00 to JB Plumbing Co. for plumbing maintenance at the Hotel; and

   f. $200.00 to the City of Omaha for a permit.

25. Bank used its own funds to pay the significant costs to redeem the real estate tax sale certificates and the premium for the force placed insurance, and added those amounts to the principal loan balance as provided for in the

Loan Documents. Bank has been using funds remaining in Debtor's bank account to pay the other costs and expenses to protect and preserve the Hotel identified above.

26. Similar to the unpaid real estate taxes, all of these expenses Bank has been and will continue to be forced to pay will erode Bank's collateral position.

27. According to 11 U.S.C. § 361(1), Bank is entitled to receive cash payments from Debtor to account for the decrease in Bank's collateral position.

28. Debtor is not doing any business and is not operating the Hotel. Debtor has no significant cash available to adequately protect Bank's interests. Debtor similarly has no significant cash available to pay the costs and expenses necessary to preserve the Collateral, and Bank is entitled to relief from the automatic stay.

**B.    Debtor Did Not File Its Bankruptcy Case In Good Faith.**

29. "A lack of good faith in filing a petition in bankruptcy may constitute cause for the lifting of the automatic stay." *In re United Imports, Inc.*, 203 B.R. 162, 170 (Bankr. D. Neb. 1996) (citing *Laguna Assoc. Ltd. Partnership v. Aetna Casualty & Surety Co. (In re Laguna Assoc. Ltd. Partnership)*, 30 F.3d 734 (6th Cir.1994)); *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir.1989); *Barclays–American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.)*, 871 F.2d 1023 (11th Cir.), *cert. denied*, 493 U.S. 853 (1989)).

30. In *In re Anthony*, No. BK11–42232–TJM, 2012 WL 1576135 (Bankr. D. Neb. May 4, 2012), Judge Mahoney identified the "[f]actors to be considered when determining whether the debtor has filed the bankruptcy case in bad faith, thereby supporting an order for relief from the stay, include the following: (1) The debtor has one asset; (2) The pre-petition conduct of the debtor has been improper; (3) There are only a few unsecured creditors; (4) The debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) The debtor and one creditor have proceeded to a standstill in state court litigation and the debtor has lost or has been required to post a bond which he cannot afford; (6) The filing of the petition effectively allows the debtor to evade court orders; (7) The debtor has no ongoing business or employees; and (8) The lack of possibility of reorganization." *In re Anthony*, 2012 WL 1576135 at *3 (citing *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co.,* 30 F.3d at 738).

31. Several of the aforementioned factors unequivocally indicate Debtor filed this bankruptcy case in bad faith and Bank is entitled to relief from the automatic stay, including the following:

    a. Debtor has one asset – the Hotel;

    b. Debtor's pre-petition conduct has been improper, as it has ceased doing business and has forced Bank to pay all the costs and expenses necessary to preserve the Collateral;

    c. Bank had posted the Collateral for a foreclosure sale, and Debtor filed this bankruptcy case on the eve of foreclosure to stop the sale;

    d. Debtor has no ongoing business and no employees; and

    e. There is no possibility of reorganization, other than a complete liquidation; however, as described in more detail below, a liquidation would not benefit the bankruptcy estate.

III. **BANK IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY BECAUSE DEBTOR DOES NOT HAVE EQUITY IN THE COLLATERAL AND THE COLLATERAL IS NOT NECESSARY FOR DEBTOR'S EFFECTIVE REORGANIZATION.**

32. There can be no dispute Debtor does not have equity in the Collateral. Debtor has been trying to find a purchaser for the Collateral for at least one year. To date, Debtor has not been able to find a potential purchaser willing to pay anywhere near the amount of the Indebtedness. To Bank's knowledge, the highest purchase offer Debtor has received is still more than $1 million short of the total Indebtedness.

33. Since it is undisputed Debtor does not have equity in the Collateral, the burden shifts to Debtor to establish the Collateral is necessary to its effective reorganization. 11 U.S.C. §§ 362(d)(2)(B) & 362(g); *In re Anderson*, 913 F.2d 530 (8th Cir. 1990).

34. The law is well-settled that to meet the burden imposed by § 362(d)(2)(B), a debtor must prove it has a "'reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n. of Texas v. Timbers*

*of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988) (quotation omitted). Section 362(d)(2)(B) requires "not merely a showing that if there is conceivably to be an effective reorganization, [the] property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." *Timbers*, 484 U.S. at 375-376 (emphasis in original).

35. "[A] debtor must show that its proposed plan of reorganization is feasible and therefore, likely confirmable." *In re Bowman*, 253 B.R. 233, 238 (B.A.P. 8th Cir. 2000) (citation omitted); *see also, In re Bloomington HH Investors, Ltd. P'ship*, 114 B.R. 174 (D. Minn. 1990). "The feasibility test contemplates 'the probability of actual performance of the provisions of the plan…. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.'" *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985) (quotation omitted).

36. In this case, Debtor cannot meet its burden under § 362(d)(2)(B), as Debtor does not have any "reasonable possibility of a successful reorganization within a reasonable time." Debtor has not operated the Hotel for over a year, and has no prospect of re-opening the Hotel anytime soon. Also, as identified above, Debtor has no cash available to pay the most basic, necessary expenses, and Bank has been forced to pay the costs and expenses necessary to protect the Collateral.

37. Debtor is unable to propose any plan or reorganization, other than a liquidating plan. However, given there is no equity in the Collateral, there is no point in a liquidating plan.

## IV. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Bank requests the Court grant Bank relief from the automatic stay as to the Collateral, including Debtor's Real Property and Personal Property; that Bank be permitted to enforce its state law remedies as to both Debtor's Real Property and Personal Property; that the Court waive the fourteen-day stay set forth in Bankruptcy Rule 4001(a)(3); and that the Court grant Bank such other and further relief as the Court deems just and equitable.

DATED this 12th day of April, 2021.

FNBC BANK, Secured Creditor and Interested Party

By: s/Brandon R. Tomjack
Brandon R. Tomjack (#22981)
Brian Barmettler (#27017)
of BAIRD HOLM LLP
1700 Farnam St, Suite 1500
Omaha, NE 68102-2068
Phone: 402.344.0500
Fax: 402.344.0588
Email: btomjack@bairdholm.com
bbarmettler@bairdholm.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2021, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

I further certify that on April 12, 2021, I mailed by United States Postal Service the document to the following non CM/ECF participants:

Summit Hotels, LLC
400 Venture Drive, Suite B
Lewis Center, OH 43035

s/Brandon R. Tomjack

DOCS/2609672.5